**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KELLY D. MICKELSON,<br><br>     Plaintiff<br><br>v.<br><br>KEN WILLIAMS, et al.,<br><br>     Defendants | Case No.: 3:25-cv-00107-MMD-CSD<br><br>**Report & Recommendation of**<br>**United States Magistrate Judge**<br><br>Re: ECF Nos. 5, 6 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for temporary restraining order and motion for preliminary injunction. (ECF Nos. 5, 6.)  Defendants have responded (ECF Nos. 20, 24, 31, 35), and Plaintiff has replied (ECF No. 39).

On March 11, 2026, the court held a hearing on Plaintiff's motions. After a thorough review, it is recommended that Plaintiffs' motion for temporary restraining order and motion for preliminary injunction be **DENIED WITHOUT PREJUDICE**.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 8.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center ("LCC") and Northern Nevada Correctional Center ("NNCC"). (*Id.*)

On screening, Plaintiff's complaint was allowed to proceed on its single claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment. (ECF No. 7.) Specifically, the court identified Plaintiff's allegation to be that

> prison officials knew that Plaintiff had a history of seizures or strokes and that a cardiologist or neurologist had ordered Plaintiff to have new stints implanted to prevent Plaintiff's seizures or strokes. However, based on the allegations, Plaintiff's surgery to have the stints implanted has not been scheduled and Plaintiff continues to have seizures or strokes. Additionally, when Plaintiff suffered from seizures or strokes, no one sent Plaintiff to an outside specialist.

(*Id.* at 6.)

It appears from the record that Plaintiff had a stroke in or around February 2024, and that a stent was later placed in his left internal carotid artery. Plaintiff claimed that he was told at that time that he would need additional stenting. (*See* ECF No. 26-1.) In a grievance dated April 14, 2024, Plaintiff explained that since being released from the infirmary, he had some seizures or strokes and that medical staff told him those would continue until he got his other stents. (ECF No. 20-1 at 12.)

On June 12, 2024, Plaintiff was seen by a neurologist, Dr. Doyle, who recommended further follow-up with vascular neurology for his severe right ICA stenosis. (ECF No. 26-1). Dr. Doyle, noting that Plaintiff had an appointment scheduled with cardiology the following week, also advised further recommendations from cardiology regarding management of Plaintiff's hypertension. (*Id.*) The notes from Plaintiff's June 19, 2024, cardiology appointment indicate that Plaintiff was awaiting further stents, as well as Plaintiff's report that he had been suffering 30-60 second seizures 3-4 times a week. (ECF No. 26-3.) Plaintiff asserts that in June 2024, a

2

doctor told him that he should be on Keppra, but he did not receive any such medication at that time.[1]

On August 27, 2024, Plaintiff had an appointment with Dr. Halow, a vascular surgeon, who ordered a CTA of Plaintiff's carotids and aortic arch and a follow-up after the CTA. (ECF No. 26-2).

A year later – on August 27, 2025 -- Plaintiff underwent the CTA. (*See* ECF No. 37-1.) According to NDOC, Plaintiff was supposed to have a follow-up appointment the following week, but the appointment was rescheduled by the doctor's office and the change was not communicated to NDOC, so the appointment was missed. (ECF Nos. 35 at 1, 35-1.)

On December 15, 2025, Plaintiff was seen again by Dr. Doyle, who prescribed Keppra, an anti-epileptic medication. (ECF No. 26-4.) Plaintiff is now on that medication. (*See* ECF No. 26-5; Hr'g Mar. 11, 2026.)

On February 24, 2026, Defendants represented that Plaintiff's follow-up appointment with Carson Surgical Group – presumably with Dr. Halow – was scheduled to take place "in the next couple of weeks." (ECF No. 35 at 2.)

On March 5, 2026, Plaintiff was seen by Dr. Halow, who concluded that Plaintiff's right side carotid needs to be fixed but that Plaintiff needs cardiac clearance first. (ECF Nos. 47, 49-1.) Defendants represent that the cardiac appointment has been approved and is currently being scheduled. (ECF No. 47.) At the March 11, 2026, hearing, defense counsel represented that Plaintiff would see the cardiologist in April, and that Plaintiff's surgery will be scheduled thereafter.

---

[1] This representation was made at the court's March 11, 2026, hearing.

In his motions for injunctive relief, filed on August 11, 2025, Plaintiff asserted that he had been suffering increasing seizures and pain in his right side for almost two years, as well as headaches and loss of mobility and mental functions. He claimed that he had not seen a specialist and that the cause of his seizures has not been determined. Plaintiff asserted that an appointment with a specialist that had been scheduled was cancelled at Defendant Williams' order "because there [was] no money for it." (ECF No. 5 at 1-2.) And, he claimed, a cardiologist who saw Plaintiff a week before his motion was filed was upset that Plaintiff had not yet been seen by a neurologist, which the cardiologist had ordered "months ago." (*Id.* at 2.)  Later in his motion, Plaintiff asserted that "NDOC has been ordered by more than 2 physicians to have me taken for stints placement in my neck, and to be examined by a neurologist so to determine cause of my numerous seizures. . . ." (*Id.* at 7.)

In their oppositions and supplements, Defendants asserts that Plaintiff has been seen by several specialists and that there is no further treatment the court can order. (ECF Nos. 20, 24, 31, 35.)

In his reply, Plaintiff asserts that he continues to suffer seizures, severe chest pain, and pressure in his head. He argues that at the March 5, 2026, visit, Dr. Halow noted "extreme severe blockage on his left side and more blockage on the right side," (ECF No. 39 at 1-2), but said he could not do surgery yet because Plaintiff "has an issue the cardiologist has to take care of first." (*Id.* at 2.) Plaintiff was surprised by this because he had never been told of any heart issue before. (*Id.* at 2-3.) Plaintiff argues that Defendants continue to violate his rights by not scheduling his appointments "in the proper order." (*Id*. at 3.)

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).).

The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support the issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation and quotation marks omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials.  The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, the PLRA limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v.  People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., Federal Practice and Procedure, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., Federal Practice and Procedure, § 2951 (3d ed. 1999) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should

be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

Moreover, in seeking injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Id.* "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

### III. DISCUSSION

A. <u>Likelihood of Success</u>

Plaintiff brings a claim of deliberate indifference to a serious medical need, which arises under the Eighth Amendment.

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two

elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104).

Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials

provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted). "'[A] prisoner need not prove that he was completely denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *Stewart v. Aranas,* 32 F.4th 1192, 1195(9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985)); *McGuckin*, 974 F.2d at 1060.

"The provision of some medical treatment, even extensive treatment over a period of years, does not immunize officials from the Eighth Amendment's requirements." *Edmo v. Corizon* 935 F.3d 757, 793 (9th Cir. 2019) (citation omitted).

Considering the record thus far, the court concludes that even assuming Plaintiff will be able to establish that his ongoing seizures amount to a serious medical need, he has not adequately supported his claim of deliberate indifference to this condition. Plaintiff's kites seeking medical care related to his seizures (which he sometimes referred to as "little seizures," (ECF No. 20-1 at 6)) – were filed from April 14, 2024, to August 14, 2024. During this timeframe, Plaintiff was seen by a neurologist, a cardiologist, and a vascular surgeon. (*See* ECF No. 26.) In none of the records from these visits are seizures identified as requiring additional medical care, though they are noted. (*See* ECF Nos. 26-1, 26-2, 26-3.)

Although Plaintiff claims a doctor prescribed him Keppra in June 2024, no reference to Keppra appears on the record currently before the court, nor has Plaintiff submitted any additional grievances or kites in which he sought such medication. If true, the fact Plaintiff did not actually receive Keppra for 18 months after it was ordered by a doctor might eventually

9

compel a finding of deliberate indifference. But the lack of evidence supporting Plaintiff's assertion precludes a finding at this juncture that Plaintiff is likely to succeed on the merits of this claim as it respects his seizures.[2]

Plaintiff's need for additional stents, however, is another issue. The court takes judicial notice that blockages of internal carotid arteries can cause strokes, leading to brain damage and even death. *See* https://www.mayoclinic.org/diseases-conditions/carotid-artery-disease/symptoms-causes/syc-20360519 (last accessed Mar. 10, 2026). Dr. Halow's March 5, 2026, notes indicate a "90% blockage" and that the right side "needs to be fixed." Thus, Plaintiff is likely to be able to establish a serious medical need in this respect.

Further, there are at least serious questions going to the merits as to whether defendants have exhibited deliberate indifference to this serious medical need. There is a clear medical record that Dr. Halow ordered a CTA related to Plaintiff's carotid artery stenosis and occlusion of bilateral carotid arteries and a follow-up appointment thereafter in August *2024.* It was not until *a full year later* that Plaintiff had his CTA, and then more than *six months* before he was seen by Dr. Halow to follow up. Other than the reason for missing Plaintiff's initial follow-up after the CTA, Defendants do not explain these significant delays.

However, as to Plaintiff's latest allegation, contained in his reply, that Defendants have been deliberately indifferent because they scheduled his appointments in the wrong order, this claim is not part of the complaint, was raised for the first time in a reply, and is at any rate without merit. Plaintiff asserts that Defendants improperly scheduled him to see Dr. Halow

---

[2] Even if Plaintiff establishes deliberate indifference in this regard, Plaintiff has now been seen by a neurologist and prescribed anti-epileptic medication, and Plaintiff does not identify what additional treatments for his seizure condition are not being provided. Injunctive relief with respect to Plaintiff's seizures is therefore not warranted at this time.

before taking him to see a cardiologist for a heart issue. But even Plaintiff admits that he did not know he had a heart issue that needed to be treated by a cardiologist before any stent surgery (ECF No. 29 at 3), nor does he present any evidence that would have put Defendants on notice of such. The court thus fails to see how Defendants could have been deliberately indifferent to an issue apparently no one knew existed.

B. Irreparable Harm

While a stroke, brain damage, and death would all clearly be irreparable harm that could result from the failure to treat Plaintiff's serious medical need, the court cannot conclude that Plaintiff is likely to suffer such harm in the absence of preliminary relief. This is because NDOC is actively pursuing medical care for Plaintiff's carotid issues. Counsel represents Plaintiff's appointment for pre-surgery clearance with a cardiologist will take place in April 2026 and Plaintiff's surgery will be scheduled thereafter. Accordingly, at this juncture, Plaintiff cannot establish a likelihood of irreparable harm in the absence of injunctive relief.

C. Balance of Equities

As to the balance of equities, the court must keep in mind its limited ability to order injunctive relief in the prison setting. Because the record does not clearly establish what more the court can order that is not already being provided by NDOC, the balance of equities do not tip in Plaintiff's favor.

D. Public Interest

While an injunction requiring NDOC to provide life-saving medical care to Plaintiff could be in the public interest, it is not in the public interest to enjoin NDOC when it is already addressing the Plaintiff's medical needs.

Accordingly, the court concludes that – at least at this time, while NDOC is actively pursuing Plaintiff's requested medical care – an injunction is not supported by the four *Winter* factors or 18 U.S.C. § 3626(a)(2). The court therefore recommends that Plaintiff's motion for temporary restraining order and motion for preliminary injunction be **DENIED WITHOUT PREJUDICE**.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING WITHOUT PREJUDICE** Plaintiff's motion for temporary restraining order and motion for preliminary injunction (ECF Nos. 5, 6).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation no later than **March 23, 2026**. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

2. That the other party may respond to any objections no later than **March 27, 2026**.

3. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: March 12, 2026

_____
Craig S. Denney
United States Magistrate Judge

12